

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-347-CV

IN THE INTEREST OF D.E.H.,
A MINOR CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## OPINION ON EN BANC RECONSIDERATION

------------

A majority of the court ordered en banc reconsideration of the court's prior opinion. *See* Tex. R. App. P. 49.7. We withdraw our opinion and judgment of December 4, 2008, and substitute this opinion and judgment in their place.

Appellant E.L. appeals the termination of her parental rights to her daughter, D.E.H. In a single point, she argues that she involuntarily executed the affidavit relinquishing her parental rights to D.E.H. and that the trial court abused its discretion by denying her motion for new trial. We will affirm.

D.E.H. was born in February 2006 to E.L. and A.H. Appellee Texas Department of Family and Protective Services ("TDFPS") received a referral sometime in September 2006 regarding a concern of physical abuse to D.E.H. D.E.H. had been taken to Cook Children's Medical Center, where it was determined that she had two fractures to each femur, four fractures to each tibia, multiple rib fractures in multiple stages of healing, a liver contusion, and a spleen laceration—injuries consistent with child abuse. The bone in her hip area had also been completely snapped off of her growth plate.

A TDFPS supervisor visited the hospital and gathered information from hospital staff, family members, and friends. A.H. admitted to punching and slapping D.E.H. on the back, twisting her leg, and shaking her and squeezing her on multiple occasions. A.H. admitted to an investigator that he caused D.E.H.'s injuries when he became irritated and "lost control" after D.E.H. started crying at night; on about three separate occasions, he grabbed her, shook her, and punched her in the stomach. TDFPS accordingly found reason to believe that D.E.H. had been physically abused by E.L. and A.H., negligently supervised by E.L., and medically neglected by both E.L. and A.H. TDFPS removed D.E.H. from E.L.'s and A.H.'s custody and care and placed her in foster care with Appellees S.G. and B.G., reasoning that she would be in extreme danger if returned to her parents' care.

2

In September 2006, TDFPS filed its petition for protection of a child, for conservatorship, and for termination in suit affecting the parent-child relationship. On September 10, 2007, E.L., her attorney, and a few of E.L.'s family members participated in a mediation with the foster parents. E.L. executed an affidavit relinquishing her parental rights to D.E.H. at some point during the mediation. She also entered into a mediated settlement agreement with the foster parents, which set forth a post-termination contact schedule for her and D.E.H.

The trial court subsequently signed an order on September 19, 2007, terminating the parent-child relationship between E.L. and D.E.H.[1] The trial court found by clear and convincing evidence that E.L. had executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by chapter 161 of the family code and that termination of E.L.'s parental rights to D.E.H. is in D.E.H.'s best interest. The order appointed TDFPS as permanent managing conservator of D.E.H. and the foster parents as possessory conservators of D.E.H.

---

[1] The trial court also terminated A.H.'s parent-child relationship with D.E.H.

E.L. filed a motion for new trial and notice of points of appeal on October 4, 2007. She filed her first amended motion for new trial and notice of points of appeal five days later, listing her "points of appeal" as follows:

a. Extreme coercion by other parties to the suit, both through promises and threats, was used to induce Movant to sign the affidavit of relinquishment.

b. The mother was placed under great duress by other parties to the suit, both through promises and threats, in order to induce her to sign the affidavit of relinquishment.

c. Fraud in the inducement was used to convince Movant that she had no choice but to sign the affidavit of relinquishment.

On October 18, 2007, the trial court held a hearing on E.L.'s motion for new trial, which it denied.

In her sole point, E.L. argues that the trial court abused its discretion by denying her motion for new trial because she established that she did not voluntarily execute the affidavit of relinquishment that underlies the trial court's termination order.[2] She contends that she executed the relinquishment affidavit in exchange for the rule 11 agreement with the foster parents (the prospective parents) providing for post-termination visits between her and D.E.H. E.L. argues that the visitation agreement is unenforceable for its failure to comply

---

[2] Although E.L. lists three "Issues Presented," her single "Point of Error" encompasses each issue.

4

with family code sections 161.206(b), 161.2061(a), and 161.2062 and that she would not have signed the affidavit of relinquishment "but for the visitation agreement."[3] Consequently, E.L. argues that she did not voluntarily sign the affidavit of relinquishment because she executed it in exchange for a legally unenforceable promise—the rule 11 post-termination visitation agreement.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a); *see also* Tex. R. Evid. 103(a)(1). If a party fails to do this, error is not preserved, and the complaint

---

[3] Section 161.206(b) provides that "an order terminating the parent-child relationship divests the parent and the child of all legal rights and duties with respect to each other, except that the child retains the right to inherit from and through the parent unless the court otherwise provides." Tex. Fam. Code Ann. § 161.206(b) (Vernon 2008). Section 161.2061(a) reads as follows:

> If the court finds it to be in the best interest of the child, the court may provide in an order terminating the parent-child relationship that the biological parent who filed an affidavit of voluntary relinquishment of parental rights under Section 161.103 shall have limited post-termination contact with the child as provided by Subsection (b) on the agreement of the biological parent and the Department of Protective and Regulatory Services.

*Id*. § 161.2061(a). Section 161.2062(a) provides that "[a]n order terminating the parent-child relationship may not require that a subsequent adoption order include terms regarding limited post-termination contact between the child and a biological parent." *Id*. § 161.2062(a).

is waived. *Bushell v. Dean*, 803 S.W.2d 711, 712 (Tex. 1991) (op. on reh'g). The complaint on appeal must be the same as that presented in the trial court. *See Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex. 1997); *Wohlfahrt v. Holloway*, 172 S.W.3d 630, 639–40 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("To have preserved error, a party's argument on appeal must comport with its argument in the trial court."), *cert. denied*, 549 U.S. 1052 (2006); *Hoxie Implement Co., Inc. v. Baker*, 65 S.W.3d 140, 151 (Tex. App.—Amarillo 2001, pet. denied) ("[G]iven that the contention before us does not comport with the objection raised below, that before us was and is waived."). An appellate court cannot reverse based on a complaint not raised in the trial court. *Banda*, 955 S.W.2d at 272. "[A]llowing appellate review of unpreserved error would undermine the Legislature's intent that cases terminating parental rights be expeditiously resolved." *In re L.M.I.*, 119 S.W.3d 707, 711 (Tex. 2003), *cert. denied*, 541 U.S. 1043 (2004).

E.L.'s argument that she did not voluntarily sign the affidavit of relinquishment because the rule 11 agreement regarding post-termination contact is unenforceable for failure to comply with family code sections 161.206(b), 161.2061(a), and 161.2062 does not comport with the arguments that she made in her original motion for new trial, in her amended motion for new trial, or at the hearing on her motion for new trial. Specifically, E.L.

6

alleged coercion, duress, fraud in the inducement, and ineffective assistance of counsel as the grounds for a new trial in her original motion for new trial. With the exception of the ineffective assistance ground, her amended motion for new trial listed the same grounds.

At the hearing on her motion for new trial, she testified that it was her understanding that she would continue to be able to visit D.E.H. if she signed the affidavit relinquishing her parental rights to D.E.H.; otherwise, she would lose her rights to D.E.H. Although "it was [her] decision" to sign the affidavit and that she "more or less" understood what was written therein, she confirmed that she was never threatened during the mediation, but she testified that she felt "pressured" to sign the affidavit. E.L. further testified that she felt like she was "forced" to sign the relinquishment. According to E.L.'s counselor, E.L. felt "distressed," "pressured," and as though her choices were limited to either never seeing D.E.H. again or signing the affidavit of relinquishment.

At no point during the hearing on her motion for new trial did E.L. argue—nor is it apparent that she was attempting to argue—that her execution of the affidavit of relinquishment was involuntary because the rule 11 agreement is unenforceable for failure to comply with family code sections 161.206(b), 161.2061(a), and 161.2062. There is a reason for this. A party seeking to overturn a termination order based on an unrevoked affidavit of

7

relinquishment is limited in her attack to arguing fraud, duress, or coercion in the execution of the affidavit, Tex. Fam. Code Ann. § 161.211(c) (Vernon 2008); *see In re M.A.W.*, 31 S.W.3d 372, 375–76 (Tex. App.—Corpus Christi 2000, no pet.), hence the fraud, duress, and coercion grounds specifically set forth in E.L.'s amended motion for new trial and the testimony at the hearing purporting to relate to duress and coercion. E.L.'s argument on appeal, however, is that she did not voluntarily sign the affidavit of relinquishment because the Rule 11 agreement is unenforceable. She does not argue that fraud, duress, or coercion played any role in her signing of the affidavit of relinquishment. This is made further apparent by examining the meanings of fraud, duress, or coercion.

Coercion occurs if someone is compelled to perform an act by force or threat. *Arnett v. Arnett*, No. 03-05-00056-CV, 2008 WL 1912058, at *1 (Tex. App.—Austin May 2, 2008, pet. filed) (mem. op.); *see also* Tex. Penal Code Ann. § 1.07(a)(9) (Vernon Supp. 2009) (setting forth definition of "coercion"); *B.A.L. v. Edna Gladney Home*, 677 S.W.2d 826, 831 (Tex. App.—Fort Worth 1984, writ ref'd n.r.e) (stating that the "essence of an 'undue influence' claim is overcoming the free will of an individual and substituting the will of another, thereby causing a person to do an act which he would not otherwise have done" and that "'[o]verreaching' is tricking,

8

outwitting, or cheating a person into doing an act which he would not otherwise have done"). Duress occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent. *Arnett*, 2008 WL 1912058, at \*1; *but see Methodist Mission Home of Tex. v. N.A.B.*, 451 S.W.2d 539, 543 (Tex. Civ. App.—San Antonio 1970, no writ) (reasoning that "exerted influence cannot be branded as 'undue' merely because it is persuasive and effective"). Fraud may be committed through active misrepresentation or passive silence and is an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another or the taking of an undue and unconscientious advantage. *Arnett*, 2008 WL 1912058, at \*1; *Gaspard v. Beadle*, 36 S.W.3d 229, 235 (Tex. App.—Houston [1st Dist.] 2001, pet. denied) (listing fraud elements as a material misrepresentation made; the representation was false; when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of its truth; the speaker made the representation with the intent that it should be acted upon by the party; the party acted in reliance upon the representation; and the party thereby suffered injury). A misrepresentation is a falsehood or untruth with the intent to deceive. *Gaspard*, 36 S.W.3d at 235.

E.L.'s appellate argument that she did not voluntarily sign the affidavit because the Rule 11 agreement is unenforceable is not an argument that she did not voluntarily sign the affidavit because she was compelled to perform some act by force or threat. E.L.'s appellate argument that she did not voluntarily sign the affidavit because the Rule 11 agreement is unenforceable is not an argument that she did not voluntarily sign the affidavit because she was incapable of exercising her free agency and was unable to withhold consent due to some kind of threat. E.L.'s appellate argument that she did not voluntarily sign the affidavit because the Rule 11 agreement is unenforceable is not an argument that she did not voluntarily sign the affidavit because there was some active misrepresentation or passive silence which was an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed that caused her injury or caused her to be unduly and unconscientiously taken advantage of. Thus, E.L.'s appellate argument that she did not voluntarily sign the affidavit because the Rule 11 agreement is unenforceable is not an argument that she involuntarily signed the affidavit of relinquishment because of fraud, duress, or coercion.

Because E.L.'s appellate argument does not comport with the grounds asserted in her amended motion for new trial or the testimony at the hearing on her motion for new trial, she has failed to preserve her complaint for appellate

10

review. *See* Tex. R. App. P. 33.1(a)(1); *L.M.I.*, 119 S.W.3d at 710–12 (holding that appellant failed to preserve for appeal complaints regarding signed affidavits relinquishing parental rights).

Even if E.L. had preserved her complaint, the trial court did not abuse its discretion by denying her motion for new trial.

Appellate courts review a trial court's decision denying a motion for new trial under an abuse of discretion standard of review. *Dir., State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985), *cert. denied*, 476 U.S. 1159 (1986).

Once an affidavit has been shown to comply with the requirements of section 161.103 of the family code, the affidavit may be set aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of fraud, duress, or coercion. *In re R.B.*, 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, no pet.); *In re N.P.T.*, 169 S.W.3d 677, 679 (Tex. App.—Dallas 2005, pet. denied); *In re D.R.L.M.*, 84 S.W.3d 281, 296 (Tex. App.—Fort Worth 2002, pet. denied), *superseded by statute on other grounds*, Tex. Fam. Code Ann. § 263.405(i) (Vernon 2008); *see also* Tex. Fam. Code

11

Ann. § 161.211(c).  The burden of proving such wrongdoing is on the party opposing the affidavit.  *R.B.*, 225 S.W.3d at 804.[4]

E.L. contends that she executed the affidavit of relinquishment in exchange for the rule 11 visitation agreement and that because the rule 11 visitation agreement is unenforceable, she involuntarily executed the affidavit of relinquishment.  At the hearing on her motion for new trial, she testified that "[t]he agreement wasn't done by [her] own will," that she "didn't sign [the affidavit of relinquishment] out of [her] own will," that she signed the affidavit because she felt "pressured" and "forced," and that she did not sign the agreement under her "free will."  The lack of "free will," the "pressure," and the "force" that E.L. testified she experienced at the mediation, however, was not coercion, fraud, or duress as identified and defined above.  *See Gaspard*, 36 S.W.3d at 234–35; *Edna Gladney Home*, 677 S.W.2d at 831; *Arnett*, 2008 WL 1912058, at *1.  Norma Bartholomew, E.L.'s counselor, testified that E.L. was informed that if her case went to trial, the likely outcome would be that she would have her rights terminated and that she would never see D.E.H. again.  E.L.'s other option was to sign the affidavit of relinquishment and enter into a

---

[4] In *R.B.*, this court did not adopt the standard of review suggested by the concurring and dissenting opinions in *L.M.I.*, nor do we adopt it here.  *See R.B.*, 225 S.W.3d at 805 (stating that "we need not expressly decide that issue here").

rule 11 agreement with the intervenors for limited visitation with D.E.H. Consistent with E.L.'s options, Bartholomew specifically identified the source of the pressure that E.L. experienced as "*losing her parental rights* and never being able to see her child again *versus some hope of limited visitation* for the life of the child until the child was grown." [Emphasis added.] As for the "coercion" that E.L. purportedly experienced, Bartholomew testified, "I think [E.L.] was very frightened *about her options* and she felt a *threat of losing contact with her child.*" [Emphasis added.] Although Bartholomew thought there was "some degree" of coercion based on how E.L. explained the options to her (if the case went to court, E.L. would never see the child again), Bartholomew opined that it was uncertainty, confusion, and anguish that E.L. experienced in weighing her limited options.

James Masek, E.L.'s attorney, opined similarly. He testified that there was not any *undue* pressure exerted on E.L. by anyone at the mediation. Instead, he testified that "[i]t's just a very emotional time. She's giving up a child. She was very emotional at the time . . . ." Masek agreed that E.L. had made a "thoughtful decision, albeit a very emotional decision," to sign the affidavit of relinquishment.

Consistent with Bartholomew's and Masek's testimony, E.L. herself identified the source and nature of the "pressure" and the "force" that she

13

claimed to have experienced at the mediation as feeling like she "didn't have any way out," that is, her only options were to sign the affidavit of relinquishment and the rule 11 visitation agreement and hope to have limited future visitation with D.E.H. or go to trial and take the chance of having her parental rights terminated. She testified as follows:

[Intervenors' attorney]: You testified that you signed [the affidavit of relinquishment] under duress. Do you remember that word?

[E.L.]: Yes.

. . . .

[Intervenors' attorney]: What does duress mean to you?

[E.L.]: Pressure.

[Intervenors' attorney]: What kind of pressure?

[E.L.]: That I didn't have anything more to do.

[Intervenors' attorney]: Anything else?

[E.L.]: I didn't have another way out.

[Intervenors' attorney]: *That was the extent of your pressure, that you didn't have any way out? Is that your testimony?*

[E.L.]: *Yes.* [Emphasis added.]

Further, E.L. testified that the consequences of signing the affidavit of relinquishment were explained to her, that she discussed the rule 11 agreement

14

and affidavit of relinquishment at length with her attorney, that she "[m]ore or less" understood the "finality of signing [the agreement]," and that she spoke with her attorney about having a jury trial prior to the mediation. Masek, who is fluent in Spanish, spent at least half of the mediation talking to E.L. about the affidavit of relinquishment. He interpreted the affidavit of relinquishment for her, he read it to her at least twice (some parts more than twice), and he went over it with her line by line. E.L. acknowledged that Masek discussed with her the meaning of the affidavit of relinquishment and that Masek told her that it was her choice to sign it or not sign it. E.L. initialed every page of the affidavit, and she placed her initials beside every single line of a paragraph that is written in bold letters and located at the end of the affidavit that states as follows:

> I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT UNTIL I HAVE READ AND UNDERSTOOD EACH WORD, SENTENCE, AND PARAGRAPH IN IT. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF THERE IS ANY THOUGHT IN MY MIND THAT I MIGHT SOMEDAY SEEK TO CHANGE MY MIND. I REALIZE THAT I SHOULD NOT SIGN THIS AFFIDAVIT OF RELINQUISHMENT IF I AM NOT THINKING CLEARLY BECAUSE OF ILLNESS, MEDICATION, MY EMOTIONAL STATE, OR ANY OTHER REASON. BECAUSE I REALIZE HOW IMPORTANT THIS DECISION IS FOR THE FUTURE OF MY CHILD, I HAVE PUT MY INITIALS BESIDE EVERY LINE OF THIS PARAGRAPH SO THAT IT WILL ALWAYS BE UNDERSTOOD THAT I HAVE READ THIS AFFIDAVIT OF RELINQUISHMENT, UNDERSTAND IT, AND DESIRE TO SIGN IT.

E.L. declared in the affidavit that she was relinquishing her parental rights freely and voluntarily. The affidavit states in relevant part as follows:

> I declare that I fully understand the meaning of this affidavit of relinquishment and the finality of my action in signing it, and, understanding all this, *I am signing this freely, voluntarily*, and with the firm conviction that this decision is the best available alternative for my child. [Emphasis added.]

Three of E.L.'s family members were present at the mediation and participated to a certain extent. According to Masek,

> [W]e did it [review the affidavit of relinquishment] slowly. We would stop. And the judge was there. The judge spoke . . . Spanish, so she would also -- we would kind of back off and say, we would kind of rest for a little while and the family would talk. It went really slowly.

Masek also explained to E.L. that the rule 11 agreement was an agreement between only her and the intervenors and that it was not "a contract that we could take to court." Towards the end of her testimony, E.L. said, "[B]ottom line, it was my decision."

Bartholomew's, Masek's, and E.L.'s testimony clarifies that E.L. did not experience coercion, fraud, or duress as contemplated by family code section 161.211(c). *See Gaspard*, 36 S.W.3d at 234–35; *Edna Gladney Home*, 677 S.W.2d at 831; *Arnett*, 2008 WL 1912058, at *1. E.L. failed to demonstrate by a preponderance of the evidence that her execution of the affidavit of relinquishment in exchange for an allegedly legally unenforceable promise

16

resulted from fraud, duress, or coercion. Assuming that E.L. had preserved her appellate argument for appeal, which she did not do, the trial court did not abuse its discretion by denying her motion for new trial.

We overrule E.L.'s sole point and affirm the trial court's judgment.


DIXON W. HOLMAN
JUSTICE

EN BANC

LIVINGSTON, J. filed a dissenting opinion.
WALKER, J. filed a concurring and dissenting opinion in which DAUPHINOT and GARDNER, JJ., join.

DELIVERED: December 3, 2009

17



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

NO. 2-07-347-CV

IN THE INTEREST OF D.E.H.,
A MINOR CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## DISSENTING OPINION TO OPINIONS ON EN BANC RECONSIDERATION

------------

Repeatedly throughout the motion for new trial hearing, appellant, E.L., testified that she would not have signed the affidavit of relinquishment as required by the mediated settlement agreement if she had known that the promised visitation would not continue.  For this reason, I respectfully dissent to the plurality opinions on rehearing en banc and the resulting judgment.

The Law

"Implicit in the family code is the requirement that the affidavit of *voluntary* relinquishment be voluntarily executed." *In re D.R.L.M.*, 84 S.W.3d 281, 296 (Tex. App.—Fort Worth 2002, pets. denied), *superseded by statute on other grounds*, Tex. Fam. Code Ann. § 263.405(i) (Vernon 2008). An involuntarily executed affidavit is a complete defense to a termination decree based solely on such an affidavit. *Id.* (citing *Vela v. Marywood*, 17 S.W.3d 750, 759 (Tex. App.—Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex. 2001)). The proponent of the voluntary affidavit of relinquishment has the burden to establish by clear and convincing evidence that the affidavit was executed in accordance with family code section 161.103. Tex. Fam. Code Ann. § 161.103 (Vernon 2008); *D.R.L.M.*, 84 S.W.3d at 296 (citing *In re V.R.W.*, 41 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2001, no pet.), and *Vela*, 17 S.W.3d at 758). Previously, we have recognized that evidence that an affidavit of voluntary relinquishment was signed, notarized, witnessed, and executed in compliance with family code section 161.103 is prima facie evidence of its validity. *See D.R.L.M.*, 84 S.W.3d at 296. The opponent of the affidavit may set it aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of fraud, duress, or coercion. *Id.* (citing Tex. Fam. Code Ann. § 161.211(c) (Vernon 2008)).

2

Recently, however, this court has noted a shift in the way some Texas Supreme Court justices would handle reviews of terminations based upon a challenge to the voluntariness of an affidavit of relinquishment. *See In re R.B.,* 225 S.W.3d 798, 804 (Tex. App.—Fort Worth 2007, no pet.). In *R.B.,* we noted that the supreme court "has opined that both the burden and standard of proof for setting aside an affidavit of relinquishment should be 'reformulated.'" *Id.* (citing *In re L.M.I.,* 119 S.W.3d 707 (Tex. 2003), *cert. denied,* 541 U.S. 1043 (2004)). In *L.M.I.,* the plurality noted that when there is an issue on the voluntariness of an affidavit of relinquishment, due process requires that the proponent of the affidavit retain the burden to prove, by clear and convincing evidence, that it was executed voluntarily. *Id.* (citing *L.M.I.,* 119 S.W.3d at 715–16 (Wainwright, J., concurring), 720 (Owen, J., concurring and dissenting), 739 (Hecht, J., dissenting)). According to *L.M.I.—* and likewise *R.B.,* in which we looked with favor on the analysis in *L.M.I.* but declined to adopt it as unnecessary,

> The United States Supreme Court has held that the Due Process Clause of the Fourteenth Amendment requires that before a state can irrevocably sever the rights of a parent, the evidence of grounds for termination must at least be clear and convincing. Accordingly, when the basis for termination is an affidavit of relinquishment, there must be clear and convincing evidence that the waiver was knowing, intelligent, and voluntary.

3

*L.M.I.,* 119 S.W.3d at 716 (Owen, J., concurring and dissenting) (citation omitted); *R.B.,* 225 S.W.3d at 804–05.[1] Neither our court in *R.B.* nor the Dallas court in *N.P.T.* specifically adopted the standard because it was unnecessary to the disposition of those cases—both courts held that the proponent of the affidavit would have been successful under either standard. *R.B.,* 225 S.W.3d at 805; *N.P.T.,* 169 S.W.3d at 680. Here, however, the answer is less clear. For that reason, we should adopt the *L.M.I.* standard in this case to ensure that all parents' due process rights are protected; the plurality opinion on rehearing en banc in this case fails to shift the burden of proof back to the proponent of the affidavit to show by clear and convincing evidence that the affidavit was executed voluntarily. I dissent from the plurality opinion on rehearing en banc's failure to apply this standard.

Preservation of Error

The plurality opinion on rehearing en banc also states that appellant has waived her complaint on appeal because it was not presented at trial and does not comport with any complaint she presented at trial. In particular, the

---

[1] ... We did, however, indicate agreement with the Dallas Court of Appeals's acknowledgment in *N.P.T.* that "there is considerable merit in applying" the standard proposed by the supreme court plurality in *L.M.I. See R.B.,* 225 S.W.3d at 805 & n.33 (citing *In re N.P.T.,* 169 S.W.3d 677, 680 (Tex. App.—Dallas 2005, pet. denied)).

4

plurality opinion on rehearing en banc contends that appellant did not raise the Rule 11 and mediated settlement agreements' failure to comply with the family code at trial. *See* Tex. Fam. Code Ann. § 161.2061(a) (Vernon 2008). However, appellant could not object or complain until she actually saw that the Order of Termination completely failed to incorporate the terms of the mediated settlement agreement or the Rule 11 agreement into it. *See D.R.L.M.*, 84 S.W.3d at 297 (holding mother could not have pleaded in trial court the involuntariness of her affidavit on the ground that she believed the trial court was required to follow her choice of managing conservator and therefore had not waived right to challenge voluntariness of affidavit). Therefore, she clearly brought the issue to the trial court's attention as soon as practicable. A review of the amended motion for new trial and the reporter's record from the hearing on the motion for new trial show more clearly what occurred.

The amended motion for new trial attacks quite clearly the sole basis for the termination: appellant's affidavit of relinquishment. The motion challenges the voluntariness of the affidavit, a fundamental prerequisite for termination granted solely on this basis. *See* Tex. Fam. Code Ann. § 161.001(1)(K), (2) (Vernon Supp. 2009). The voluntariness of her relinquishment is appellant's sole complaint. The motion broadly claims coercion "through promises and threats" to induce appellant to sign the affidavit of relinquishment, along with

5

fraud in the inducement to convince appellant that she had no choice but to sign the affidavit. While it does not mention the mediated settlement agreement's failure to comply with specific provisions of the Texas Family Code, it clearly mentions promises, threats, or fraud being involved. Therefore, I would conclude and hold that E.L. preserved her challenge to the voluntariness of her affidavit.

Evidence of Voluntariness of Affidavit

Furthermore, as explained by the plurality opinion on rehearing en banc, appellant signed two documents at the end of the mediated settlement conference: a mediated settlement agreement and an attached Rule 11 agreement, which were properly filed as part of the record in the termination proceeding. The mediated settlement agreement and the Rule 11 agreement clearly provide for appellant's post-termination visitation with her daughter. Additionally, the agreements state that it is the intent of the parties that the agreements shall be enforceable under sections 6.602 and 153.0071 of the Texas Family Code, both of which provide for the enforceability of such agreements as judgments in court. *See id.* § 6.602 (Vernon 2006), § 153.0071 (Vernon Supp. 2009). The agreements also clearly contemplate the preparation of additional documents to effect the agreements and require the parties' future cooperation in the preparation and execution of such

6

documents. Moreover, throughout the hearing on appellant's motion for new trial, appellant continuously and repeatedly testified to her main complaint, *without objection: that she would not have signed any affidavit of relinquishment and would have gone to trial if she had not been given the promises of the continuous right to see and visit her daughter in the future.*

For example, at the beginning of her direct examination, appellant testified without objection, "The agreement wasn't done by my own will. The agreement, I did it because they told me, whether I signed or not, they were going to take my rights." And she continued, "[T]hey told me about the paper, it says that with this paper, neither the [foster parents] or me could break the plan that we made," again without objection. And again, on redirect, appellant testified, "[I believed] that the [mediated settlement] agreement was going to be held. It was going to be in place forever." The licensed professional counselor testified that appellant believed "she would be allowed to see her child for the rest of her life because there had been a judge who had overseen the mediation."

Moreover, the mediated settlement agreement says that the parties will appear in court "to present evidence and secure rendition of judgment in accordance with [it]" and that "EITHER PARTY SHALL BE ENTITLED TO

7

JUDGMENT ON THIS AGREEMENT UNDER THE PROVISIONS OF SECTION 153.0071 OR SECTION 6.602 OF THE TEXAS FAMILY CODE."

Further supporting the lack of voluntariness, the record shows that appellant is non-English speaking. She was not provided an interpreter prior to the hearing on the motion for new trial, although her trial counsel and the Department's caseworker were Spanish-speaking. However, a careful reading of the record shows—even with this help—the obvious problems with the language barrier and counsel's ability to inform or examine appellant. Appellant had to rely on what her attorney told her because she could not understand what people were saying when they testified. The record also shows that appellant had numerous difficulties in terminology, both legal and otherwise.

For example, appellant testified on cross-examination that no one read the entire English Affidavit of Relinquishment to her: "Well, they explained it to me, but it wasn't read to me." No one was telling appellant what was being asked or said during questions in the hearing. And in support of her claim of pressure or coercion, appellant called her therapist to the stand, who said that appellant telephoned her during the actual mediation process because she was "very distressed" and "pressured" to sign the mediated settlement agreement or risk losing seeing her child forever. Her therapist, who spoke Spanish, said that appellant had a difficult time understanding English, especially in terms of the

8

court or legal system. Ultimately, in the therapist's opinion, appellant signed the agreement because she thought it was irrevocable and would ensure her lifetime visitation.

Of even greater concern is the testimony of the CPS specialist and caseworker, who, on direct examination by the assistant district attorney during the termination proceeding stated,

> Q    And it's your understanding that [E.L.] has executed a Relinquishment of Parental Rights?
>
> A    Yes.
>
> Q    And in your knowledge, was it signed freely and voluntarily?
>
> A    Yes, it was.
>
> Q    Did the Department promise [E.L.] anything for signing the relinquishment?
>
> A    No promises were made.  [Emphasis added.]

While this was a technically correct response because *the Department* was not a signatory to the mediated settlement agreement or the Rule 11 agreement, at the very least the statement is misleading to the court; it ignores the actuality of the settlement negotiations and the Rule 11 agreement between the foster parents and the mother, despite the Department's clear knowledge of the basis for the settlement. In final arguments at the motion for new trial hearing, the attorney for the Department even said that "[E.L.] was not misled into

believing any promises were given to her from the Department at any point. We were not part of any of the mediation proceedings in that we were not in the room with her." Thus, while the Department wants to rely upon the Affidavit of Relinquishment as the basis for termination of E.L.'s parental rights, it is unwilling to even recognize that at the very least she was misled about the permanence of the visitation rights after an adoption was complete. And more importantly, I would conclude that the Department's testimony before the trial court at the hearing on the motion for new trial was incomplete at best. For all these reasons, I would hold that E.L. sufficiently submitted evidence showing her lack of voluntariness in the execution of the Affidavit of Relinquishment and the execution of the mediated settlement agreement and the Rule 11 agreement.

### En Banc Review

This case was initially filed in our court on October 10, 2007; it was submitted to a panel of three justices on April 1, 2008. The original panel plurality opinion was authored by Justice Dixon Holman on December 4, 2008; the chief justice concurred without opinion while I dissented with opinion to the trial court's denial of the motion for new trial. Appellant filed a motion for rehearing en banc on December 19, 2008. At the time appellant filed her motion for rehearing en banc this court was still composed of the same seven

10

justices:  Chief Justice Cayce, Justices Dauphinot, Holman, Gardner, Walker, McCoy, and myself.  On December 31, 2008, Justice Holman reached mandatory retirement.[2]

On January 1, 2009, Justice William C. Meier was sworn in to Place 2, Senior Justice Holman's previously vacated seat.  Thus, Justice Meier also participated in the court's ruling on the motion for rehearing en banc as required by the rules.  *See* Tex. R. App. P. 49.7.  Our court granted the motion and resubmitted the case for oral argument on April 1, 2009, but by then the en banc court was composed of eight justices, instead of the regular seven justices.[3]

En banc consideration of a case is disfavored.  *See* Tex. R. App. P. 41.2(c).  It should not be ordered "unless necessary to secure or maintain uniformity of the court's decisions or unless *extraordinary circumstances* require" it.  *Id.* (emphasis added).  There have been several different interpretations of what constitutes extraordinary circumstances, but the Texas Supreme Court has acknowledged that appellate courts have the right to

---

[2] Justice Holman was appointed to sit on this case to hear and participate in the court's decision on the motion for rehearing en banc while the motion was pending.  *See* Tex. R. App. P. 41.2(a).

[3] Texas Rule of Appellate Procedure 41.2(a) requires all members of the court to participate, as well as a prior justice who originally heard the case.  Tex. R. App. P. 41.2(a).

11

"consider a case en banc if the circumstances require and the court votes to do so." *See Wal-Mart Stores, Inc. v. Miller*, 102 S.W.3d 706, 708 n.1 (Tex. 2003); *see also Unifund CCR Partners v. Villa*, 273 S.W.3d 385, 392 (Tex. App.—San Antonio 2008) (Marion, J., dissenting) (stating, "when there is no *conflict* among panel decisions, the existence of 'extraordinary circumstances' is required before en banc consideration may be ordered" (emphasis added)), *rev'd*, No. 08-1026, 2009 WL 3403326 (Tex. Oct. 23, 2009); *Ex parte Ellis*, 279 S.W.3d 1, 30 (Tex. App.—Austin 2008, pet. granted) (Henson, J., dissenting) (observing that need for en banc review must be balanced with court's mandate to do substantial justice and to hear accelerated matters at the earliest practicable time, citing Tex. R. App. P. 31.2 and 41.2(c)); *Rodriguez v. Cuellar*, 143 S.W.3d 251, 263–64 (Tex. App.—San Antonio 2004, pet. denied) (Lopez, C.J., dissenting) (complaining of majority opinion granting en banc review because of the "high degree of public interest . . . and to maintain uniformity of the court's decisions," and the impropriety of en banc review because the majority "simply disagreed with the result that the panel majority reached").

A "plurality opinion" is an "appellate opinion without enough judges' votes to constitute a majority, but having received the *greatest* number of votes of any of the opinions filed." Bryan A. Garner, *A Dictionary of Modern Legal*

12

*Usage* 419 (1987) (emphasis added). "Majority" is "a number that is more than half of a total." Black's Law Dictionary 1040 (9th ed. 2009). Thus, the opinion we issue today is not a majority opinion or even really a plurality opinion; it is merely a majority judgment, thus ultimately not justifying en banc submission, something we could not have known at the time we voted to go en banc.

The final plurality opinion on rehearing en banc reflects the following: four justices believe that appellant preserved her complaint at trial and on appeal regarding the voluntariness of her signing the affidavit of relinquishment, and four justices believe she did not. However, because three justices (those joining the concurring and dissenting opinion) also believe appellant has other remedies available to her to enforce her rights, seven justices join in the judgment only.

## Conclusion

Therefore, I would hold that appellant timely and properly preserved her complaint as to the voluntariness of the affidavit of relinquishment by raising the issue in her motion for new trial, that she offered sufficient evidence to show the lack of voluntariness in the execution of the affidavit because the terms of the mediated settlement agreement and Rule 11 agreement were not properly incorporated into the Order on Termination as agreed, and that we

13

should retain and ensure the application of the clear and convincing burden of proof on the proponents of the affidavit in conformity with the *L.M.I.* plurality. Therefore, I would hold that the trial court abused its discretion in denying appellant's motion for new trial, reverse the termination order, and remand this case for a new trial. Thus, I respectfully dissent to the result in this case for those reasons and also because there is no majority or even plurality opinion in this en banc case.

TERRIE LIVINGSTON
JUSTICE

DELIVERED: December 3, 2009

14



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

NO. 2-07-347-CV

IN THE INTEREST OF D.E.H.,
A MINOR CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## CONCURRING AND DISSENTING OPINION
## TO OPINION ON EN BANC RECONSIDERATION

------------

For the reasons set forth below, I agree with the dissenting opinion that E.L. preserved her appellate complaint that her affidavit of relinquishment was not executed voluntarily; I dissent from the plurality opinion's holding to the contrary. But, because I believe that the mediated settlement agreement entered into by the parties is, in fact, legally enforceable, I concur with the plurality opinion's holding that the trial court did not abuse its discretion by denying E.L.'s motion for new trial.

E.L. and her attorney, both of the foster parents and their attorney, and the attorney ad litem for D.E.H. all signed a mediated settlement agreement. The mediated settlement agreement complies with the requirements of family code section 153.0071(d), making it binding on the parties to the agreement. *See* Tex. Fam. Code Ann. § 153.0071(d) (Vernon Supp. 2009). When a mediated settlement agreement meets the requirements of section 153.0071(d), "a party is entitled to judgment on the mediated settlement agreement notwithstanding Rules 11, Texas Rules of Civil Procedure, or another rule of law." *Id.* § 153.0071(e).

The body of the parties' mediated settlement agreement simply contains boilerplate provisions concerning the enforceability of the agreement; it contains no specific agreed terms. Instead, the mediated settlement agreement states that the "[t]erms of the settlement are set out in Exhibit 'A' attached to this agreement." At the end of the agreement, after the provision "<u>EACH PARTY UNDERSTANDS AND AGREES THAT THIS AGREEMENT IS NOT REVOCABLE</u>," is a handwritten notation that the "attached Rule 11 is agreement of parties." A three-page document titled "Rule 11 Agreement" is attached to the mediated settlement agreement. The rule 11 agreement attached to and incorporated in the mediated settlement agreement is also signed by all the parties. That

document outlines the agreed-upon terms of the post-termination and post-adoption visitation of D.E.H. by E.L.[1]

Following the execution of the mediated settlement agreement incorporating the rule 11 agreement, E.L. executed an affidavit of voluntary relinquishment, relinquishing her parental rights to D.E.H. The trial court subsequently signed an order terminating E.L.'s parental rights to D.E.H. based solely on her affidavit of voluntary relinquishment. *See id.* § 161.001(1)(K) (Vernon Supp. 2009).

E.L. filed a motion for new trial and testified at the motion for new trial hearing that she had signed the affidavit of voluntary relinquishment in reliance on the provisions of the rule 11 agreement, which was incorporated into the parties' mediated settlement agreement and which provided her with post-termination and post-adoption visitation with D.E.H. E.L. now complains on appeal that because the parties' agreement is purportedly legally unenforceable, she was fraudulently induced into executing her affidavit of relinquishment.

I cannot agree with the plurality opinion's conclusion that E.L. did not raise her appellate complaint in the trial court. The family code expressly

---

[1] For example, the agreement sets forth visitation "after the child turns 3" and provides that if E.L. misses two consecutive visits with D.E.H., all contact for E.L. shall cease.

3

authorizes a parent to pursue a direct attack on a termination order that is based on the parent's affidavit of voluntary relinquishment on the ground of fraud in the execution of the affidavit of relinquishment. *See id.* § 161.211(c) (Vernon 2008). The Texas Supreme Court and numerous courts of appeals have recognized that a false representation of a right to continued, post-termination visitation made to a biological parent to encourage that parent to sign an affidavit of voluntary relinquishment constitutes fraud. *See, e.g., Rogers v. Searle*, 544 S.W.2d 114, 115 (Tex. 1976) (recognizing in bill of review proceeding that fraudulent misrepresentations inducing execution of affidavit of voluntary relinquishment constitute extrinsic fraud); *Jones v. Tex. Dep't of Protective & Regulatory Servs.*, 85 S.W.3d 483, 492–93 (Tex. App.—Austin 2002, pet. denied) (same); *Queen v. Goeddertz*, 48 S.W.3d 928, 931–32 (Tex. App.—Beaumont 2001, no pet.) (same); *In re S.A.B.*, No. 04-01-00795-CV, 2002 WL 1573431, at *3 (Tex. App.—San Antonio July 17, 2002, pet. denied) (not designated for publication) (same). Because E.L.'s appellate complaint that she did not voluntarily sign the affidavit of relinquishment is, exactly, an argument that she involuntarily signed the affidavit of

relinquishment because of fraud, I respectfully dissent from the plurality opinion's holding that E.L. failed to preserve this complaint.[2]

I nonetheless concur with the plurality opinion's disposition of this appeal because I believe that the parties' mediated settlement agreement that incorporates the rule 11 agreement providing for post-termination and continued post-adoption visitation of D.E.H. by E.L. *is* legally enforceable, contrary to the position taken by the plurality opinion and by the dissenting opinion. The family code expressly provides that, when a mediated settlement agreement meets the

---

[2] ... The position taken by the plurality opinion—that "E.L.'s appellate argument that she did not voluntarily sign the affidavit because the Rule 11 agreement is unenforceable is not an argument that she involuntarily signed the affidavit of relinquishment because of fraud, duress, or coercion"—has been expressly rejected in a similar case. *See Vela v. Marywood*, 17 S.W.3d 750, 763 (Tex. App.—Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex. 2001). In *Vela*, the appellate court explained,

> Marywood [as the majority here] takes this testimony [testimony by the mother that she was not physically threatened or coerced or defrauded into signing the relinquishment affidavit] out of context. [Biological mother] was not threatened, coerced, or defrauded into physically signing the relinquishment affidavit. At the time she signed the affidavit, [biological mother] did not know that the post-adoption plan was unenforceable and thus had no reason to believe that she would not have access to her child. [Biological mother's] testimony cannot be considered evidence that the affidavit was signed knowingly and voluntarily because she was testifying about her state of mind before she knew that the post-adoption plan was unenforceable.

*Id.*

requirements of section 153.0071(d), "a party is entitled to judgment on the mediated settlement agreement *notwithstanding* Rule 11, Texas Rules of Civil Procedure, or *another rule of law*."  *See* Tex. Fam. Code Ann. § 153.0071(e) (emphasis added).  Here, the mediated settlement agreement meets the requirements of section 153.0071(d).  Consequently, both E.L. and the foster parents, as parties to the mediated settlement agreement, are "entitled to judgment on the mediated settlement agreement *notwithstanding* Rule 11, Texas Rules of Civil Procedure, or *another rule of law*."  *See id.* (emphasis added).  "Notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule of law" means, by its plain language, notwithstanding another rule of law set forth in the family code, that is, notwithstanding sections 161.206(b) and 161.2062 (the provisions E.L. claims make the mediated settlement agreement legally unenforceable).  *See id.* § 161.206(b) (Vernon 2008) (providing that termination order divests parent and child of all legal rights except child's right of inheritance); § 161.2062 (Vernon 2008) (providing that termination order "may not require that a subsequent adoption order include terms regarding limited post-termination contact"); *Beyers v. Roberts*, 199 S.W.3d 354, 358–59 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding section 153.0071's "notwithstanding any other law" provision meant that the trial court could enforce a mediated settlement agreement providing for joint

6

managing conservatorship with no designation of conservator who had right to determine child's primary residence despite section 153.133(a)(1)'s requirement for such designation); *see also In re L.M.M.*, 247 S.W.3d 809, 811–12 (Tex. App.—Dallas 2008, pet. denied) (enforcing mediated settlement agreement in child custody dispute); *see generally, e.g., In re Marriage of Joyner*, 196 S.W.3d 883, 890 (Tex. App.—Texarkana 2006, pet. denied) (recognizing absolute enforceabilty of mediated settlement agreements).

Moreover, holding that the parties' mediated settlement agreement is enforceable is not inconsistent with the provisions of family code sections 161.206(b) and 161.2062. D.E.H. will retain the right to inherit from E.L. if the mediated settlement agreement and its post-termination, post-adoption visitation provisions are enforced. *See* Tex. Fam. Code Ann. § 161.206(b). And while family code section 161.2062 prohibits a termination order from *requiring* that a subsequent adoption order include terms regarding limited post-termination contact between the child and parent, that section does not, on its face, prohibit a pre-termination *agreement* between prospective adoptive parents and the biological parent concerning post-termination visitation. Even the foster parents, who are the prospective adoptive parents here and who

7

have filed a response to E.L.'s motion for en banc reconsideration, contend that the parties' mediated settlement agreement may be legally enforceable.[3]

Finally, sections 161.206(b) and 161.2062 deal generally with orders terminating parental rights while section 153.0071(d) deals specifically with mediated settlement agreements. A fundamental principle of statutory construction is that a more specific statute controls over a more general one. *Beyers*, 199 S.W.3d at 359 (citing *Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex. 2000)). The government code provides that general and specific provisions should be construed, if possible, to give effect to both, but when they cannot be reconciled, the specific provision should prevail. *Id.*; Tex. Gov't Code Ann. § 311.026 (Vernon 2005). Thus, to the extent, if any, that enforcement of the parties' mediated settlement agreement conflicts with family code sections 161.206(b) and 161.2062, section 153.0071—specifically

---

[3] The foster parents point out that while a termination decree (as opposed to an adoption decree) cannot require post-termination, post-adoption visitation because the adoptive parents cannot be forced to permit visitation, nothing would prohibit an adoption decree from including an agreement between the adoptive parents and the biological parent permitting post-adoption visitation. The foster parents also point out that although section 161.206(b) divests a biological parent of legal rights and duties "innately accompanying the parent-child relationship" it does not divest a biological parent of any contractual rights negotiated by the biological parent such as those set forth in the mediated settlement agreement here.

8

dealing with mediated settlement agreements in suits affecting the parent-child relationship—controls.  *See Beyers*, 199 S.W.3d at 359.

Because I would hold that the parties' mediated settlement agreement, including provisions for post-termination visitation, is legally enforceable and because there has been no showing that the foster parents have violated this agreement, I concur with the plurality opinion's holding that the trial court did not abuse its discretion by denying E.L.'s motion for new trial.

SUE WALKER
JUSTICE

DAUPHINOT and GARDNER, JJ., join.

DELIVERED:  December 3, 2009

9