

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00121-CV

**IN THE INTEREST OF A.T.**, A.T., X.T., M.T., and F.T., Children

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2013-PA-02073
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:     Luz Elena D. Chapa, Justice

Sitting:          Sandee Bryan Marion, Chief Justice
                 Rebeca C. Martinez, Justice
                 Luz Elena D. Chapa, Justice

Delivered and Filed:  August 5, 2015

AFFIRMED

Rebekah T. appeals the trial court's order terminating her parental rights to her five children, A.T., A.T., X.T., M.T., and F.T., asserting the evidence is insufficient to support the trial court's findings that she voluntarily executed an unrevoked or irrevocable affidavit of relinquishment of parental rights and that termination is in the children's best interest.  We affirm the trial court's order.

## PROCEDURAL HISTORY

On August 28, 2013, the Texas Department of Family and Protective Services filed its original petition requesting the immediate removal of the children from their parent's care.  On September 10, 2013, the Department and the parents reached an agreement for the children to

remain in the Department's care with the parents having supervised visitation. Both parents were provided service plans on October 7, 2013.

At a hearing on June 12, 2014, Rebekah T. was represented by her third attorney, who had filed a motion to withdraw. After the caseworker testified about Rebekah T.'s lack of progress and the Department's decision to proceed with terminating her rights, the trial court asked the attorney about her motion. The attorney stated she intended to withdraw at the conclusion of the hearing; however, Rebekah T. had "indicated to me that she's willing to relinquish right now." The trial court then granted a request for a recess "to allow that relinquishment to be done." Rebekah T. signed an affidavit of voluntary relinquishment the same day.

On June 23, 2014, a trial was held on the merits only as to Rebekah T., who was not present. The caseworker again testified regarding Rebekah T.'s failure to complete her service plan, and the trial court took judicial notice of the court's file, including the affidavit of relinquishment. At the conclusion of the trial, the trial court signed an interlocutory order terminating Rebekah T.'s rights.

On July 7, 2014, Rebekah T. filed a pro se "Motion to Rescind Signature for Voluntary Termination of Parental Rights." The Motion states, "I was pressured into making a decision without PROPER THOUGHT, I did not REALIZE what I was signing and this is *due to a learing [sic] disability see attached exhibit A.*" The exhibit is a letter dated August 21, 2009, to Rebekah T. from Charles E. Gutierrez, Ph.D. The letter states that its purpose is to provide Rebekah T. with a summary of Dr. Gutierrez's assessment and recommendations. The letter further states:

> I have found that you meet criteria for Major Depressive Disorder, Recurrent, Moderate: Anxiety Disorder, Not Otherwise Specified. Sexual Abuse of a Child (Victim).
> I recommend that you continue your treatment with Dr. Sanchez for your continued care. Finally, your condition does not render you incapable of taking care of your children and I recommend that you have your children back in your home with you.

On July 23, 2014, Rebekah T. filed a pro se motion for new trial. This motion states: (1) she signed the affidavit of relinquishment under duress and extreme confusion; (2) she was pressured into making a decision without proper thought; and (3) her attorney did not explain the relinquishment to her.

On August 12, 2014, Rebekah T.'s attorney filed another motion to withdraw, stating she was unable to effectively communicate with Rebekah T. On August 19, 2014, the attorney also filed a motion for the trial court to appoint Rebekah T. a Guardian ad Litem to help her understand the termination process and the affidavit of relinquishment she signed. The motion also requests the trial court to appoint Rebekah T. a special assistant who can assist her in understanding the court proceedings because she has disabilities that affect her ability to understand them.

On September 23, 2014, a hearing was held on the attorney's motion to withdraw, and Rebekah T. was present at the hearing. The attorney explained Rebekah T. was asking her "to do post-judgment things." In response to the trial court's questions, Rebekah T. acknowledged she was asking her attorney to file documents after she signed the affidavit. Because Rebekah T. was seeking to have the order terminating her parental rights set aside or appealed, the trial court granted the motion to withdraw, but appointed appellate counsel to represent Rebekah T.

Rebekah T. filed a motion for severance, seeking to make the order terminating her parental rights final for purposes of appeal. At a hearing held on January 20, 2015, the trial court reset the matter as to the father's rights to allow further mediation. With regard to the motion for severance, the trial court noted that the interlocutory order was entered at Rebekah T.'s insistence that the trial court "go forward on the affidavit of relinquishment." Because trial as to father was set for one month from the date of the hearing, the trial court denied the motion for severance.

On February 5, 2015, the parties appeared before the trial court and announced an agreement was reached with the father during mediation. Rebekah T.'s attorney objected because

he and his client were not present for the mediation. The trial court again noted Rebekah T. insisted the affidavit of relinquishment be entered, and as a result, Rebekah T.'s presence at the mediation was not necessary.

On February 12, 2015, the trial court held a final hearing and entered a final order terminating the father's rights as to M.T. and F.T. but appointing the father possessory conservator as to A.T., A.T., and X.T. The Department was appointed managing conservator of all of the children. Rebekah T. timely filed this appeal.

## STANDARD OF REVIEW

To terminate parental rights pursuant to section 161.001 of the Family Code, the Department has the burden to prove: (1) one of the predicate grounds in subsection 161.001(1); and (2) that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). The applicable burden of proof is the clear and convincing standard. TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014).

In reviewing the legal sufficiency of the evidence to support the termination of parental rights, the court must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.*

In reviewing the factual sufficiency of the evidence to support the termination of parental rights, a court "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id*. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

### AFFIDAVIT OF RELINQUISHMENT

In her first issue, Rebekah T. contends the evidence is insufficient to show that she voluntarily executed the affidavit of relinquishment. In support of this contention, Rebekah T. relies on the statements she made in her motion to rescind and motion for new trial. She argues she felt pressured to execute the affidavit due to duress, a learning disability, and extreme confusion, and her trial counsel did not adequately explain the affidavit. As previously noted, the only evidence attached to these motions was a 2009 letter summarizing a doctor's assessment of Rebekah T. and stating she suffered from depressive and anxiety disorders.

The children's ad litems initially assert in their brief Rebekah T. waived this issue by not presenting it to the trial court. The Department, however, has the burden to prove the elements necessary to support termination of the parent-child relationship. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014). When the Department seeks termination based on an affidavit of relinquishment, the Department has the burden to prove the affidavit was voluntarily executed. *Id*. at 113, 115. "An involuntarily executed affidavit is a complete defense to a termination based on section 161.001(1)(K)." *Id*. at 113.

In this case, the record establishes Rebekah T. independently expressed the desire to execute the affidavit. After executing the affidavit during a recess at a hearing, the record shows Rebekah T. insisted on proceeding with the relinquishment. Although Rebekah T.'s motions state

she felt pressured, "[a] direct or collateral attack on an order terminating parental rights based on an unrevoked affidavit of relinquishment of parental rights . . . is limited to issues relating to fraud, duress, or coercion in the execution of the affidavit." TEX. FAM. CODE ANN. § 161.211(c) (West 2014); *In re D.E.H.*, 301 S.W.3d 825, 828-29 (Tex. App.—Fort Worth 2009, pet. denied). In this case, the record contains no evidence of any duress or coercion. *See In re D.E.H.*, 301 S.W.3d at 828-29 (stating "[c]oercion occurs if someone is compelled to perform an act by force or threat" and '[d]uress occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent"). Mere pressure based on Rebekah T.'s own feelings is not sufficient. *See In re Bruno*, 974 S.W.2d 401, 405-06 (Tex. App.—San Antonio 1998, no pet.). Moreover, although Rebekah T. stressed she had a learning disability, the record contains no evidence to support this contention. The 2009 letter attached to her motion does not make any reference to a learning disability. Finally, the trial court also observed Rebekah T. in the courtroom and her insistence that the relinquishment be entered. Because the record contains no evidence of any fraud, coercion or duress, and the record establishes Rebekah T. executed the affidavit at her own insistence, the evidence is sufficient to support the trial court's implied finding that Rebekah T. voluntarily executed the affidavit.

## BEST INTEREST

In her second issue, Rebekah T. contends the evidence is legally and factually insufficient to support a finding that termination of her parental rights was in the children's best interest. The ad litems for the children assert Rebekah T.'s affidavit alone is sufficient to support the best interest finding, and legal authority exists to support this assertion. *See Brown v. McLennan Cty. Children's Protective Servs.*, 627 S.W.2d 390, 394 (Tex. 1982) (stating "it was the intent of the Legislature to make such an affidavit of relinquishment sufficient evidence on which the trial court can make a finding that termination is in the best interest of the children"); *Lumbis v. Tex. Dep't*

*of Protective & Regulatory Servs.*, 65 S.W.3d 844, 850 (Tex. App.—Austin 2002, pet. denied) ("An irrevocable affidavit relinquishing a parent's rights and a petition for termination can support a finding that termination is in the best interest of the child and a judgment of termination."); *Ivy v. Edna Gladney Home*, 783 S.W.2d 829, 833 (Tex. App.—Fort Worth 1990, no writ) (holding "an affidavit of waiver of interest in child, in and of itself, is sufficient to find termination is in the best interest of the child"). This court, however, has held an affidavit of relinquishment "is not *ipso facto* evidence that termination is in the children's best interest." *In re A.H.*, 414 S.W.3d 802, 806 (Tex. App.—San Antonio 2013, no pet.).

In reviewing the sufficiency of the evidence to support the best interest finding, we apply the factors set out in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody for the child; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id*.

In her brief, Rebekah T. asserts the record contains no evidence as to several of the foregoing factors. The Texas Supreme Court has, however, stated "[t]he absence of evidence about some of [the factors] would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest." *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

In this case, the oldest daughter, A.T. expressed a desire for her mother's rights not to be terminated. The next two oldest children, A.T. and X.T., expressed a desire to be reunified with their father. M.T. and F.T. were too young to express their desires.

With regard to the emotional and physical needs of the children and the emotional and physical danger to the children now and in the future, the trial court, as the factfinder, could permissibly infer that Rebekah T.'s future conduct could be measured by her recent past conduct. *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). In this case, Rebekah T. had an extensive history of involvement with the Department based on allegations of abuse and neglect and had been referred to Family Based Support Services on repeated occasions. When the children were removed from the home, the conditions of the home were reported to be unsafe. The children were sleeping in an unventilated attic, and the home contained animal feces and rodent droppings. When the children were initially removed, A.T. and X.T. were struggling academically, and M.T. and F.T. were developmentally delayed. While in placement, the children progressed well, were no longer struggling academically or developmentally, and were being provided with the support and stability they needed.

With regard to parenting abilities and Rebekah T.'s acts and omissions, the record establishes Rebekah T. failed to complete her services. At one hearing, the case worker reported Rebekah T. refused to communicate with the Department and was not supportive of the Department's efforts. The CASA volunteer also reported Rebekah T. required the Department to only communicate with her through her attorney. Despite concerns with Rebekah's mental health, she refused to provide the Department with information regarding her psychiatric treatment. The CASA volunteer reported Rebekah T. was sending harassing and degrading emails to CASA and Department staff, and she engaged in erratic, vulgar, and alarming behaviors. The trial court's notes also refer to Rebekah T.'s Facebook threats and slander, and the trial court made reference at one hearing to being familiar with the case "because it has a long famous Facebook history." In her last report before Rebekah T. relinquished her parental rights, the CASA volunteer reported Rebekah T. continued to engage in erratic, vulgar, and alarming behaviors, had not completed

services, did not have stable housing, was not employed, and her therapist had discharged her unsuccessfully. The case worker also testified Rebekah T. was inappropriate with the Department's employees and her behavior was upsetting to the children. Finally, although not conclusive on the issue of best interest, Rebekah T.'s willingness to sign the affidavit of relinquishment and her insistence that the trial court enter the order based on her affidavit is relevant to the best interest inquiry. *In re A.H.*, 414 S.W.3d at 806.

With regard to the plans for the children and their stability, the oldest daughter A.T. expressed her desire to remain in her current placement until she aged out of the system. The next two oldest children, A.T. and X.T., expressed a desire to be reunified with their father. Finally, M.T. and F.T. were placed in the same foster home with plans for adoption. As previously noted, the reports contained in the record establish that the children progressed academically and developmentally while in their current placements, and their therapists supported the Department's plans for the children.

Having reviewed the record, we hold the evidence is legally and factually sufficient to support the trial court's finding that termination of Rebekah T.'s parental rights was in the children's best interest.

**CONCLUSION**

The trial court's order is affirmed.

Luz Elena D. Chapa, Justice
