# NO. 12-14-00122-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *IN THE INTEREST OF* | § | *APPEAL FROM THE* |
| *A.C, Z.C., J.C., S.C., AND A.C.,* | § | *COUNTY COURT AT LAW #1* |
| *MINOR CHILDREN* | § | *GREGG COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

M.M. and C.C. appeal the termination of their parental rights to A.C., Z.C., J.C., S.C., and A.C.1. They jointly raise two issues on appeal.[1] We affirm.

### BACKGROUND

M.M. and C.C. (collectively Appellants) are the parents of A.C, Z.C., J.C., S.C., and A.C.1. The Department of Family and Protective Services (the Department) filed an original petition for protection of the children, for conservatorship, and for termination on April 24, 2013. The Department's initial goal of family reunification changed to termination, and the contested bench trial was set for March 17, 2014. M.M. and C.C. did not appear at trial, but affidavits of voluntary relinquishment of parental rights to the Department with Appellants' signatures were filed and offered into evidence. The trial court terminated Appellants' parental rights to their five children based on the relinquishments and found that termination was in the children's best interest. Appellants filed motions for new trial, each stating that they intended to appeal the trial court's finding that they executed an "unrevoked or irrevocable affidavit of relinquishment of parental rights." The trial court conducted a hearing on Appellants' motions and denied their requests for a new trial. This appeal followed.

---

[1] To protect the identity of the children who are the subject of this suit, we use aliases to identify the various parties involved. *See* TEX. R. APP. P. 9.8(b)(2).

## <u>TERMINATION OF PARENTAL RIGHTS</u>

The natural right between a parent and child is one of constitutional dimensions; thus, termination proceedings must be strictly scrutinized. *In re K.M.L.*, No. 12-0728, 2014 WL 4252270, at \*7 (Tex. Aug. 29, 2014) (not yet released for publication) (citations omitted). Section 161.001 of the Texas Family Code permits the termination of parental rights if two elements are met. TEX. FAM. CODE ANN. § 161.001 (West 2014); *In re C.L.C.*, 119 S.W.3d 382, 390 (Tex. App.—Tyler 2003, no pet.). First, the parent must have engaged in any one of the acts or omissions itemized in the first subsection of the statute. TEX. FAM. CODE ANN. § 161.001(1); *In re C.L.C.*, 119 S.W.3d at 390. Second, termination must be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2); *In re C.L.C.*, 119 S.W.3d at 390. Both elements must be proved by "clear and convincing evidence," and proof of one element does not alleviate the petitioner's burden of proving the other. TEX. FAM. CODE ANN. § 161.001; *In re C.L.C.*, 119 S.W.3d at 390. "Clear and convincing evidence" means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014).

When the burden of proof is clear and convincing evidence, we conduct a legal sufficiency review by looking at all of the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *Id.* Thus, it follows that the reviewing court should disregard all evidence that a reasonable fact finder could have disbelieved or found to have been incredible, but this does not mean that the reviewing court must disregard all evidence that does not support the finding. *Id.* Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence. *Id.* If, after conducting our legal sufficiency review, we determine that no reasonable fact finder could form a firm belief or conviction that the matter which must be proven is true, then we will conclude that the evidence is legally insufficient. *Id.*

When we conduct a factual sufficiency review, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* Our inquiry is whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We consider whether the

disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* If, when viewed in light of the entire record, the disputed evidence is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* In finding evidence factually insufficient, the appellate court should detail why it has concluded that a reasonable fact finder could not have credited disputed evidence in favor of its finding. *Id.* at 267.

The standard of review for legal and factual sufficiency challenges maintains a deferential standard for the fact finder's role, which means the trier of fact is the exclusive judge of the credibility of the witnesses and weight to be given their testimony. *In re C.H.*, 89 S.W.3d 17, 26-27 (Tex. 2002); *Nordstrom v. Nordstrom*, 965 S.W.2d 575, 580 (Tex. App.—Houston [1st Dist.] 1997, pet. denied). Thus, our review must not be so rigorous that the only fact findings which could withstand review are those established beyond a reasonable doubt. *In re C.H.*, 89 S.W.3d at 26.

<u>**VOLUNTARINESS OF RELINQUISHMENT**</u>

In their first issue, Appellants ask this court to determine whether "the affidavit of relinquishment of parental rights signed by the parents [was] voluntarily executed." We construe this issue as a challenge to the sufficiency of the evidence supporting termination under Section 161.001(1)(K) of the family code and a challenge to the trial court's denial of their motions for new trial.

**Termination Under Section 161.001(1)(K)**

A trial court may terminate the parent-child relationship if it finds by clear and convincing evidence that the parent has executed an unrevoked or irrevocable affidavit of relinquishment of parental rights as provided by the family code. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(K), 161.103 (West 2014). The party seeking termination has the burden to prove the elements necessary to support termination of the parent-child relationship. *In re K.M.L.*, 2014 WL 4252270, at *8. It is implicit in Section 161.001(1)(K) that the affidavit of parental rights be voluntarily executed. *Id.*; *see also* TEX. FAM. CODE ANN. § 161.103 (West 2014).[2]

---

[2] Section 161.103 requires that the affidavit be "for voluntary relinquishment." TEX. FAM. CODE ANN. § 161.103(a) (West 2014); *see also In re K.M.L.*, No. 12-0728, 2014 WL 4252270, at *8 (Tex. Aug. 29, 2014) (not yet released for publication).

Thus, the burden is on the party seeking termination to prove by clear and convincing evidence that the parent voluntarily—that is, knowingly and intelligently—executed the affidavit of relinquishment. *In re K.M.L.*, 2014 WL 4252270, at \*8, 10; *Monroe v. Alternatives in Motion*, 234 S.W.3d 56, 61-62 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (citations omitted) ("[B]ecause an affidavit of relinquishment waives a constitutional right, it must be made voluntarily, knowingly, intelligently, and with full awareness of its legal consequences.").

An affidavit of relinquishment in proper form is prima facie evidence of its validity. *See Monroe*, 234 S.W.3d at 62 (citing *In re V.R.W.*, 41 S.W.3d 183, 190 (Tex. App.—Houston [14th Dist.] 2001, no pet.), *disapproved on other grounds*, *In re J.F.C.*, 96 S.W.3d 256, 267 n.39 (Tex. 2002). But an involuntarily executed affidavit is a complete defense to a termination suit based on Section 161.001(1)(K). *In re K.M.L.*, 2014 WL 4252270, at \*8.

**The Trial**

A contested bench trial on the Department's petition for termination was scheduled to begin on March 17, 2014. When the case was called, trial counsel advised the trial court that Appellants had signed affidavits of relinquishment earlier that morning, had given him the authority to "stand in for them," and were "a little verklempt."[3] The affidavits were filed, and each was entitled "Affidavit of Voluntary Relinquishment of Parental Rights to the Department of Family and Protective Services." One affidavit contains M.M.'s signature and the other contains C.C.'s signature.

Trial counsel confirmed that he had sufficient time to speak to Appellants about relinquishing their parental rights. He explained that they had met "for several hours" the previous day, and that he counseled with them about trial, revocations, and "relinquishment[] of their rights." He advised Appellants to think about relinquishment overnight and to return the next morning (the day of trial). Trial counsel informed the court that Appellants called him early that morning and advised that they wanted to relinquish. Trial counsel explained that

> [t]he State prepared the documents this morning. We went over them each. We read through every line. They understood everything, in my opinion. We had two witnesses and a notary when they decided to conclude; and then at the conclusion of their signatures, they both decided they did not want to appear in court today.

---

[3] "Verklempt" (also "farklempt") is a Yiddish word that means "[u]nable to speak because of emotion; choked up." *See* The American Heritage Dictionary of the English Language, *available at* https://www.ahdictionary.com/word/search.html?id=F5038500.

The following discourse then took place:

> Court: So they fully understood that they had the right to challenge the evidence of the State and to actually have a trial today, in which the State would have had the burden to prove to the Court by clear and convincing evidence the matters in the petition?
>
> Trial Counsel: They understood, Your Honor.
>
> Court: And they had the opportunity to ask you and to counsel with you about the effects of signing this document relinquishing parental rights?
>
> Trial Counsel: Yes, ma'am, they do.
>
> Court: And do you believe they executed these documents of their own will and free choice?
>
> Trial Counsel: I do, Your Honor.

The Department offered, and the trial court admitted, the affidavits into evidence. Each affidavit contains a statement that the parent has "been informed of and understand[s]" his or her parental rights. Each affidavit also states that

> by naming the Department of Family and Protective Services as managing conservator in this Affidavit of Relinquishment, I give up all my parental rights and grant them to the Department and/or to the adoptive parents with whom my children may be placed.

Each affidavit designates the Department as the managing conservator of the children and states that the parent

> freely, voluntarily, and permanently give[s] and relinquish[es] to the Department all my parental rights and duties. I consent to the placement of the children for adoption or in substitute care by the Department or by a licensed children-placing agency.
>
> . . . .
>
> This Affidavit of Relinquishment of Parental Rights is and shall be final, permanent, and irrevocable. I fully understand that, if I change my mind at any time, I can never force the agency to destroy, revoke[,] or return this affidavit.

Lastly, the affidavit contains the following acknowledgement above the relinquishing parent's signature:

> I fully understand that this affidavit, once signed, is irrevocable, and I will not be further informed of any hearings or proceedings affecting the children named in this affidavit, including any termination suit.
>
> I have received a copy of this Affidavit of Relinquishment at the time of signing.

No evidence was presented at trial to show that the execution of the affidavits was involuntary.

After viewing the evidence in the light most favorable to the trial court's ruling, we conclude that a reasonable fact finder could form a firm belief or conviction that Appellants knowingly, intelligently, and voluntarily executed their affidavits of relinquishment. *See In re J.F.C.*, 96 S.W.3d at 266. After reviewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction about the truth of the Department's allegations under Section 161.001(1)(K) of the family code. *See* TEX. FAM. CODE ANN. § 161.001(1)(K); *In re J.F.C.*, 96 S.W.3d at 266. Therefore, the evidence is both legally and factually sufficient to support termination of Appellants' parental rights under Section 161.001(1)(K) of the family code.

**Motion for New Trial**

We review a trial court's denial of a motion for new trial for abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). Absent an abuse of discretion, the trial court's ruling will not be disturbed on appeal. *See Dir. State Employees Workers' Comp. Div. v. Evans*, 889 S.W.2d 266, 268 (Tex. 1994).

An order terminating parental rights based on an affidavit of relinquishment may be set aside upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of fraud, duress, or coercion. *See* TEX. FAM. CODE ANN. § 161.211(c) (West 2014); *In re D.E.H.*, 301 S.W.3d 825, 830 (Tex. App.—Fort Worth 2009, pet. denied); *see also In re C.E.*, No. 02-14-00054-CV, 2014 WL 3866159, at *5 (Tex. App.—Fort Worth Aug. 7, 2014, no pet.) (mem. op.) (proponent showed compliance with section 161.103; thus, it was mother's burden, for purposes of motion for new trial, to prove by preponderance that affidavit was executed due to fraud, duress, or coercion); *but see In re L.M.I.*, 119 S.W.3d 707, 716 (Tex. 2003) (Wainwright, J., concurring) (expressing concern that placing burden on parents to set aside affidavit "may run afoul of constitutional and statutory mandates for the burden of proof and quantum of evidence necessary to terminate parental rights").

Fraud may be committed through active misrepresentation or passive silence and is an act, omission, or concealment in breach of a legal duty, trust, or confidence jointly imposed when the breach causes injury to another or the taking of an undue and unconscientious advantage. *Id.* at 710 (citing *Vela v. Marywood*, 17 S.W.3d 750, 760 (Tex. App.—Austin 2000), *pet. denied*, 53 S.W.3d 684 (Tex. 2001)); *In re D.E.H.*, 301 S.W.3d at 829 (citations omitted). Duress occurs when, due to some kind of threat, a person is incapable of exercising her free agency and unable to withhold consent. *Id.* Coercion occurs if someone is compelled to perform an act by force or threat. *Id.* at 828 (citations omitted).

## New Trial Hearing

Appellants contend that testimony elicited during the hearing on their motions for new trial shows their affidavits of relinquishment were not voluntarily executed. M.M. testified that when she signed the affidavit, it was her understanding that the Department was going to terminate her parental rights regardless of what she did and that "it was going to be a messy, messy thing that really didn't have to happen. . . ." She confirmed that she "didn't really want to sign [the] affidavit." She also testified that she understood appealing the issue of voluntarily relinquishing her parental rights was possible, but "we thought we were going to have to hire an appeals attorney, which was going to be extremely expensive."

M.M. further testified that the affidavits were not read to them, that trial counsel "summed it up," and that they "were just shown where to sign on the paper."[4] She confirmed that she and C.C. had met with trial counsel one or two days prior to the trial setting and that when they arrived at the courthouse on the day of trial, she and C.C. intended to sign affidavits of relinquishment. M.M. knew the Department was ready for trial, but stated that she signed the affidavit "[b]ecause I didn't have any other choice." However, M.M. confirmed that no one forced her to sign the affidavit and that she had signed it voluntarily.

C.C. substantially agreed with M.M.'s testimony, and confirmed he understood that there would not be a trial or an opportunity for him to present any defenses to the Department's allegations upon his execution of the affidavit of relinquishment. C.C. contended that in the months leading up to trial, "all of 'em" (referring to representatives from the Department) had threatened him that his parental rights would be terminated. But C.C. confirmed that on the

---

[4] C.C. testified that trial counsel "skimmed over" the affidavit of relinquishment and explained that most of their conversation with trial counsel on that day concerned witness testimony if the case proceeded to trial.

morning he signed the affidavit, no one had threatened him into executing the affidavit. He also stated that at the time he signed the affidavit, he believed he could appeal.

Appellants' trial counsel confirmed that he reviewed the affidavits with Appellants "for some period of time and also discussed their options." He stated that he was satisfied that they had executed the affidavits freely and voluntarily. Trial counsel described Appellants' chance of success at trial as "dire." He testified that there had always been some confusion with Appellants on some of the explanations that he would give them regarding their rights, but he explained that "we would always clarify[, and that once] we did find exactly what they were looking for, we were able to clarify."

Although there is some evidence that Appellants may have been confused about their right to appeal the trial court's termination order, they did not show by a preponderance of the evidence that the affidavits of relinquishment were signed due to fraud, duress, or coercion. *See* TEX. FAM. CODE ANN. § 161.211(c). Therefore, the trial court did not abuse its discretion in denying Appellants' motions for new trial. *See **In re R.R.**, 209 S.W.3d at 114; **Evans**, 889 S.W.2d at 268.

## Conclusion

We have held that the evidence is sufficient to support termination of Appellants' parental rights under Section 161.001(1)(K) and that the trial court did not abuse its discretion by denying Appellants' motions for new trial. Accordingly, we overrule Appellants' first issue.

## BEST INTEREST OF THE CHILD

In their second issue, Appellants challenge the sufficiency of the evidence supporting termination under Section 161.001(2) of the family code.

## Applicable Law

The party seeking termination must prove by clear and convincing evidence that termination of a parent's rights is in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2). Parental rights may not be terminated merely because a child might be better off living elsewhere. ***In re C.R.***, 263 S.W.3d 368, 375 (Tex. App.—Dallas 2008, no pet.).

In determining the best interest of the child, the courts consider a number of factors including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the

8

parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

The family code also provides a list of factors that we will consider in conjunction with the above-mentioned *Holley* factors. *See* TEX. FAM. CODE ANN. § 263.307(b) (West 2014). Here, the applicable statutory factors include (1) the children's age and physical and mental vulnerabilities, (2) whether the children are fearful of living in or returning to their home, (3) whether there is a history of abusive or assaultive conduct by the children's family or others who have access to the children's home, (4) whether there is a history of substance abuse by the children's family or others who have access to the children's home, (5) the willingness and ability of the children's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision, and (6) the willingness and ability of the children's family to effect positive environmental change. *See id.* § 263.307(b)(1), (5), (7), (8), (10), (11).

The Department need not prove all of the statutory or *Holley* factors to show that termination of parental rights is in the children's best interest. *See Holley*, 544 S.W.2d at 372; *In re J.I.T.P.*, 99 S.W.3d 841, 848 (Tex. App.—Houston [14th Dist.] 2003, no pet.). Undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the children's best interest. *In re M.R.J.M.*, 280 S.W.3d 494, 507 (Tex. App.—Fort Worth 2009, no pet.). But the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence supporting termination of parental rights is also probative in determining whether termination is in the best interest of the child. *See In re C.H.*, 89 S.W.3d at 28-29.

**Discussion**

At the time of trial, Appellants' four oldest children were eight, seven, five, and two years old. Their youngest child was eleven months old. Nikki Payne, a conservatorship supervisor for the Department, testified that the children were removed from Appellants' care due to Appellants' drug use and domestic violence. Despite being offered drug treatment services, M.M. continued to use drugs during the pendency of the case and had a positive drug

strip test the week before trial. These facts weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (7), (8), (11); *Holley*, 544 S.W.2d at 372.

Payne's testimony showed that Appellants failed to demonstrate an ability to provide the children with a safe, drug-free home, and that they both failed to complete the Department's service plan. These facts weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(10); *Holley*, 544 S.W.2d at 372.

Payne confirmed that throughout the pendency of the case, the children have continued to suffer from emotional difficulties upon seeing their parents. According to Payne's testimony, Appellants' oldest child, A.C., had expressed in an interview that she would be scared when Appellants fought and said that the children would hide behind the bed during the fighting. In discussing the measures needed to correct the children's emotional and behavioral issues, Payne confirmed that it would be an ongoing process requiring consistency and structure. These facts weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.307(b)(1), (5), (7); *Holley*, 544 S.W.2d at 372.

Payne testified that it was in the children's best interest that Appellants' parental rights be terminated. She explained that the Department's plans for the three oldest children were to place them with their maternal grandmother through their "Fostering Connections Program." She confirmed that the children have responded positively to being in their grandmother's home and are doing fairly well in school. The two youngest children had not been placed with their grandmother at the time of trial, but Payne testified that they "can be placed" with her. These facts weigh in favor of termination. *See id*.

Charlie Kennington, a CASA volunteer, testified that he favored termination of Appellants' parental rights because Appellants did not follow the court's suggestion "as far as drug rehab and what the Court has asked them to do." Lastly, Appellants signed affidavits that state, "Termination of the parent-child relationship is in the best interest of the children." These facts also weigh in favor of termination. *See* TEX. FAM. CODE ANN. § 263.3007(b)(10), (11); *In re A.G.C.*, 279 S.W.3d 441, 452 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (citing *Brown v. McLennan Cnty. Children's Protective Servs.*, 627 S.W.2d 390, 394 (Tex. 1982) ("[W]e find it was the intent of the Legislature to make such an affidavit of relinquishment sufficient evidence on which the trial court can make a finding that termination is in the best interest of the children.")); *but see In re A.H.*, 414 S.W.3d 802, 806 (Tex. App.—San Antonio 2013, no pet.)

("[R]elinquishment is not *ipso facto* evidence that termination is in the children's best interest[.]").

**Conclusion**

The evidence supporting the trial court's best interest finding is undisputed. After viewing the evidence in the light most favorable to the finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of Appellants' parental rights was in the children's best interest. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 266. After viewing the entire record, we hold that a fact finder could reasonably have formed a firm belief or conviction about the truth of the Department's allegations that termination of the parent-child relationship between Appellants and their five children was true. *See* TEX. FAM. CODE ANN. § 161.001(2); *In re J.F.C.*, 96 S.W.3d at 266. Accordingly, we overrule Appellants' second issue.

## DISPOSITION

Having overruled Appellants' two issues, we ***affirm*** the judgment of the trial court.

BRIAN HOYLE
Justice

Opinion delivered October 22, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

11



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 22, 2014

### NO. 12-14-00122-CV

### IN THE INTEREST OF A.C, Z.C., J.C., S.C., AND A.C.,
### MINOR CHILDREN

Appeal from the County Court at Law No. 1

of Gregg County, Texas (Tr.Ct.No. 2013-858-CCL1)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

# THE STATE OF TEXAS
# M A N D A T E
**********************************************

**TO THE COUNTY COURT AT LAW NO. 1 OF GREGG COUNTY, GREETING:**

Before our Court of Appeals for the 12th Court of Appeals District of Texas, on the 22nd day of October, 2014, the cause upon appeal to revise or reverse your judgment between

**IN THE INTEREST OF A.C, Z.C., J.C., S.C., AND A.C., MINOR CHILDREN**

**NO. 12-14-00122-CV; Trial Court No. 2013-858-CCL1**

Opinion by Brian Hoyle, Justice.

was determined; and therein our said Court made its order in these words:

"THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance."

**WHEREAS, WE COMMAND YOU** to observe the order of our said Court of Appeals for the Twelfth Court of Appeals District of Texas in this behalf, and in all things have it duly recognized, obeyed, and executed.

**WITNESS, THE HONORABLE JAMES T. WORTHEN**, Chief Justice of our Court of Appeals for the Twelfth Court of Appeals District, with the Seal thereof affixed, at the City of Tyler, this the xx day of September, 2014.

CATHY S. LUSK, CLERK

By: _Katrina McClenny_
Chief Deputy Clerk