

# IN THE
# TENTH COURT OF APPEALS

### No. 10-24-00291-CV

## IN THE INTEREST OF R.C.,
## A BABY BOY

### From the 18th District Court
### Johnson County, Texas
### Trial Court No. DC-D202300789

## MEMORANDUM OPINION

Father appeals the trial court's termination of his parental rights to R.C. based on his affidavit of voluntary relinquishment of parental rights.[1] In three issues, Father challenges the sufficiency of the evidence supporting the predicate ground for termination and the best-interest finding, and argues that the trial court abused its discretion in denying his motion for new trial. We affirm.

---

[1] Mother's parental rights to R.C. were also terminated pursuant to an affidavit of voluntary relinquishment of parental rights. Mother does not appeal.

## Background

Shortly after R.C. was born, the Department of Family and Protective Services ("the Department") filed its Original Petition for Protection of a Child, for Conservatorship, and for Termination in Suit Affecting the Parent-Child Relationship.[2] The trial court signed an order naming the Department the temporary sole managing conservator of the child and eventually referred the case to mediation, which occurred on July 30, 2024.

The parties were surprised when R.C.'s foster parents unexpectedly brought the child to the mediation. The mediation concluded with Mother and Father each entering into a mediated settlement agreement ("MSA") and signing affidavits of voluntary relinquishment of their parental rights to R.C.. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(K). At the final hearing on August 23, 2024, the trial court signed a termination order in which it found by clear and convincing evidence that the parents executed affidavits of voluntary relinquishment as provided for in Section 161.001(b)(1)(K) of the Family Code and that termination of their parental rights was in R.C.'s best interest. *See id.* at §§ 161.001(b)(1)(K), (b)(2). Father timely filed a motion for new trial alleging that he was threatened, coerced, and bribed at mediation to sign the

---

[2] Father was one of two alleged fathers named in the original petition. Once Father's paternity of R.C. was confirmed, the petition was amended to correctly identify the parties.

MSA and the affidavit of voluntary relinquishment of his parental rights. After a hearing, the trial court denied the motion for new trial. This appeal followed.

## Sufficiency of the Evidence

In his first issue, Father urges that the evidence is insufficient to support the trial court's predicate finding that he executed an affidavit of voluntary relinquishment under Section 161.001(b)(1)(K) of the Family Code because his affidavit was obtained through coercion, duress, or fraud.[3] In his third issue, he argues that no evidence was presented to support the trial court's best-interest finding. We disagree.

STANDARD OF REVIEW

The standards of review for legal and factual sufficiency in cases involving the termination of parental rights are well established and will not be repeated here. *See In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009); *In re J.F.C.*, 96 S.W.3d 256, 264-68 (Tex. 2002); *see also In re J.F.-G.*, 612 S.W.3d 373, 381-82 (Tex. App.—Waco 2020), *aff'd*, 627 S.W.3d 304 (Tex. 2021). We give due deference to the factfinder's findings and must not substitute our judgment for that of the factfinder. *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006). The factfinder is the sole judge of the credibility of the witnesses and the weight to give their testimony. *Jordan v. Dossey*, 325 S.W.3d 700, 713 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

---

[3] Father also states that the affidavit of relinquishment was obtained by "misrepresentation, undue influence or overreaching." However, Section 161.211(c) limits the grounds of attack on an affidavit of relinquishment to fraud, duress, and coercion. *See* TEX. FAM. CODE ANN. § 161.211(c).

When the trial court called this case for the final hearing, the Department's attorney informed the court that Father was having second thoughts about his MSA and affidavit of voluntary relinquishment signed at mediation. The trial court asked Father's attorney whether she had a position on the MSA. Father's attorney replied, "I have discussed this with my client. We discussed it the day of mediation. He has something he wanted to say to the Court."

Father then began speaking to the trial court and explained that he signed the documents because he was "bribed into this deal," "coerced," and "threatened" at mediation. The Department offered Father's MSA and affidavit of voluntary relinquishment into evidence. Counsel representing each party, including Father's attorney, voiced no objection to the documents, and both documents were admitted into evidence. None of the parties called any witnesses or offered any additional evidence at the hearing.

Affidavit of Voluntary Relinquishment

Parental rights may be terminated only if the trial court finds by clear and convincing evidence that (1) the parent has committed an act prohibited by Section 161.001(b)(1) of the Family Code and (2) termination is in the child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b). To terminate parental rights based on a parent's execution of an affidavit of voluntary relinquishment, the parent's affidavit must comply

with the requirements of Section 161.103 of the Family Code.  *Id.* at §§ 161.001(b)(1)(K), 161.103.  The proponent of the affidavit of voluntary relinquishment has the burden to establish by clear and convincing evidence that the affidavit meets the requirements of Section 161.103.  *Id.* at § 161.103.  An affidavit of voluntary relinquishment in proper form is *prima facie* evidence of its validity.  *In re D.R.L.M.*, 84 S.W.3d 281, 296 (Tex. App.—Fort Worth 2002, pet. denied).  The affidavit may then be set aside only upon proof, by a preponderance of the evidence, that the affidavit was executed as a result of fraud, duress, or coercion.  *See* TEX. FAM. CODE ANN. § 161.211(c); *In re D.R.L.M.*, 84 S.W.3d at 296.

Father does not challenge the form of the affidavit on appeal, and our review of the affidavit confirms that it satisfies the statutory requirements of Section 161.103.[4]  *See* TEX. FAM. CODE ANN. § 161.103.  Consequently, the burden shifted to Father to prove by a preponderance of the evidence that the affidavit of voluntary relinquishment was procured by fraud, coercion, or duress.  *Id*. at  §§ 161.103, 161.211(c).  Father argues that

---

[4] Father briefly argues, without citing to any authority, that the MSA and affidavit of relinquishment should be read together as one document.  He notes that the MSA includes provisions for limited post-termination contact between Father and R.C. and claims that, if the documents are read together, his affidavit of relinquishment includes improper terms for limited post-termination contact prohibited by Section 161.103(h).  *See* TEX. FAM. CODE ANN. § 161.103(h).  First, Father did not present this complaint to the trial court and has therefore waived this complaint on appeal.  *See* TEX. R. APP. P. 33.1.  Secondly, even if Father's complaint was preserved, Section 161.211(c) of the Family Code limits the attack of an unrevoked affidavit of relinquishment to issues relating to fraud, duress, or coercion in the affidavit's execution; therefore, we are precluded from reviewing this challenge to an alleged deficiency in the affidavit under Section 161.103. *See* TEX. FAM. CODE ANN. §§ 161.103, 161.211(c); *See In re M.B.T.*, No. 10-16-00067-CV, 2016 Tex. App. LEXIS 7429, at *5-6 (Tex. App.—Waco July 13, 2016, pet. denied) (mem. op.).

he met this burden through his statements at the final hearing.[5]  Father informed the trial court that during mediation, R.C. was removed from the room after Father could not stop looking at him.  He briefly described hearing R.C. talking and screaming in the hallway and feeling pressured to sign the documents based on representations that he could interact with the child if he signed the documents.  He also claimed to feel threatened by representations that he would not see the child again if he did not sign the documents.[6]

"Fraud," "duress," and "coercion" are not statutorily defined in the Family Code.  The Fort Worth Court of Appeals, in reviewing a challenge to a parent's affidavit of voluntary relinquishment, defined the terms as follows:

> Coercion occurs if someone is compelled to perform an act by force or threat.  *In re D.E.H.*, 301 S.W.3d 825, 828 (Tex. App.—Fort Worth 2009, pet. denied) (op. on reh'g).  Duress occurs when, due to some kind of threat, a person is incapable of exercising free agency and unable to withhold consent.  *Id.* at 829.  Fraud may be committed through active misrepresentation or passive silence and is an act, omission, or concealment in breach of a legal duty, trust, or confidence justly imposed, when the breach causes injury to another, or the taking of an undue and unconscientious advantage.  *Id.*

*In re M.M.*, No. 02-21-00153-CV, 2021 Tex. App. LEXIS 8557, 2021 WL 4898665, at *14 (Tex.

---

[5] The State notes that Father was not under oath when he made these statements.  *See* TEX. R. EVID. 603 ("Before testifying, a witness must give an oath or affirmation to testify truthfully"); *see also Ex parte Holliday*, 619 S.W.3d 859, 862 (Tex. App.—Houston [14th Dist.] 2021, no pet.).  However, no one objected to Father's unsworn testimony at the hearing.  Failure to timely object serves to waive any argument that the testimony was not properly admitted.  *See In re S.R.S.*, No. 08-24-00038-CV, 2024 Tex. App. LEXIS 5132, at *21 n. 9 (Tex. App.—El Paso July 19, 2024) (mem. op.) (considering the unsworn statements of a witness in its analysis where no objection was made).

[6] At the final hearing, Father did not specify who may have made these representations to him.

App.—Fort Worth Oct. 21, 2021, pet. denied) (mem. op.). Courts have consistently held that a parent's feeling pressured, emotionally upset, or under stress while signing the affidavit of relinquishment, as Father described here, does not render the affidavit involuntary. *See, e.g., In re D.E.H.*, 301 S.W.3d at 830-32; *In re M.B.T.*, 2016 Tex. App. LEXIS 7429, at *8; *Lumbis v. Tex. Dep't of Protective & Regul. Servs.*, 65 S.W.3d 844, 851 (Tex. App.— Austin 2002, pet. denied).

Further, the language of the affidavit of voluntary relinquishment and the MSA include evidence supporting a determination that Father voluntarily executed his affidavit. Father's MSA expressly states that he agreed to sign an affidavit of voluntary relinquishment "solely out of love and affection for the child." Immediately above the signature lines, the MSA states, "This Contractual Agreement was signed on the 30th day of July, 2024 and was made voluntarily." Father's affidavit of voluntary relinquishment states that he was informed of his parental rights and duties and that he "freely, voluntarily, and permanently" relinquishes his parental rights and duties to the Department.

Considering the evidence under the appropriate standards, we conclude that the trial court could rationally form a firm belief or conviction that Father's affidavit was voluntary and not procured by fraud, coercion, or duress. Therefore, we hold that the evidence is legally and factually sufficient to affirm the trial court's judgment terminating

Father's parental rights on the basis of his affidavit of relinquishment. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(k). Accordingly, we overrule Father's first issue on appeal.

<u>Best-Interest Finding</u>

Absent extraordinary circumstances, a parent's affidavit of voluntary relinquishment in which the parent expressly attests that termination is in the child's best interest can constitute ample evidence on its own to support a trial court's best-interest determination. *In re K.S.L.*, 538 S.W.3d 107, 111-12 (Tex. 2017). Father attests in his affidavit that relinquishment of his parental rights is in R.C.'s best interest. No other evidence regarding the best-interest of the child was presented. Father's statements to the court at the final hearing were limited to his personal feelings about the circumstances surrounding his signing the documents; he did not mention R.C.'s best interest in his statements to the court or claim that the documents should be invalidated because termination was not in R.C.'s best interest. Accordingly, we find that there was sufficient evidence presented to support the trial court's best-interest finding and we overrule Father's third issue on appeal.

## Motion for New Trial

In his second issue, Father argues that the trial court abused its discretion in denying his motion for new trial. We disagree.

STANDARD OF REVIEW AND RELEVANT LAW

We review a trial court's denial of a motion for new trial for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner and without reference to any guiding rules or principles. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003). We defer to the trial court's factual findings if they are supported by the evidence, but we review *de novo* the trial court's legal determinations. *Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011).

DISCUSSION

Father testified at the hearing on the motion for new trial and elaborated on the circumstances surrounding his execution of the MSA and affidavit of voluntary relinquishment. He claimed that during mediation, "the District Attorney" told him he was not allowed to look at R.C.. After the child was removed from the room, Father described hearing R.C. screaming and crying nearby and attributed this environment to his claims of threat, coercion, and bribery in executing the affidavit and MSA. Father explained that he believed he was bribed because he was told he could hold R.C. if he relinquished his rights. He also described feeling threatened because he was told that if he refused to relinquish his rights, he would never see R.C. again. Finally, regarding coercion, Father said that he "felt coerced by [R.C.'s] surprise, by the fact that he was there and then I was told that I wasn't allowed to look at him." Father admitted on cross-examination that he could not identify or describe the person who allegedly made these statements to him. He stated that he had informed his attorney and the Department that

he did not want to relinquish his rights, and claimed that if R.C. had not been present at the mediation, he never would have agreed to relinquish his rights. In sum, Father expressed his position as, "You can't bring something like that in a courtroom and expect someone to make a logical decision of something of that impact that will sever a relationship with their child forever."

The Department called two witnesses who were present at the mediation and who were personally unaware of any person threatening, coercing, or bribing Father or telling him that he was prohibited from looking at R.C.

At the conclusion of the hearing, the trial court acknowledged the inherent difficulty in deciding to relinquish parental rights to a child, whether or not the child could be heard in the background. However, the court ultimately concluded that while R.C.'s unexpected presence at the mediation may have influenced Father's decision to sign the documents, the child's presence did not rise to the level of fraud, duress, or coercion. In denying the motion for new trial, the trial court also considered the language in the affidavit itself that stated Father fully understood that the affidavit, once signed, was irrevocable.

Considering the above-stated definitions of fraud, duress, and coercion in conjunction with the evidence presented at Father's hearing on the motion for new trial, we find that the trial court did not abuse its discretion in denying the motion for new trial. Accordingly, we overrule Father's second issue.

## Conclusion

Having overruled all of Father's issues on appeal, we affirm the judgment of the trial court.

                             STEVE SMITH
                             Justice

Before Chief Justice Johnson,
       Justice Smith, and
       Justice Harris
Affirmed
Opinion delivered and filed January 30, 2025
[CV06]

